UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 03-916(DSD/JGL)

Karen D.P. Kuzminskas,
John F. Patterson IV,
and William O. Patterson III,

        Plaintiffs,

v.

Sherry G. Patterson and
P. Randall Zierhut,

        Defendants.

**SECOND AMENDED FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER**

Allen I. Saeks, Esq. and Jeffrey A. Eyres, Esq., Leonard, Street & Deinard, 150 Fifth Street South, Suite 2300, Minneapolis, MN 55402, counsel for plaintiffs.

Thomas L. Fabel, Esq. and Mary Alice Fleming, Esq., Lindquist & Vennum, 4200 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, counsel for defendants.

**INTRODUCTION**

This matter is before the court upon defendants' motion for additional findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(b). Following a four-day bench trial in August of 2004, the court issued its initial findings of fact and conclusions of law on November 30, 2004, and entered judgment in favor of plaintiffs. Both parties moved for amended findings and conclusions. On May 20, 2005, the court granted both motions in part. The court also gave straightforward directions for calculating the judgment in favor of plaintiffs.

Defendants seek greater clarification and supplemental findings including a specific amount of judgment entered in favor of plaintiffs.  A party may move to amend pursuant to Rule 52(b) to clarify or supplement factfindings in light of factual issues determined at trial.  See Pro Edge L.P. v. Gue, 377 F. Supp. 2d 694, 698 (N.D. Iowa 2005).  Defendants assert that the court should specify that they must transfer to plaintiffs shares of Patterson Dental Company ("PDCO") stock with the market value of $5,393,983.  In arriving at this amount, defendants point to testimony from plaintiffs' expert witness Dana House concerning the value and appreciation of the John F. and Sherry G. Patterson Trust ("Patterson trust").  The calculation includes appreciation from July 20, 2000, through the date of distribution in January or February 2002.  To avoid adjustments in value that occurred after the date of distribution, defendants contend that the stock should be valued as of the date of the court's final order.  In addition, they argue that the $10.1 million held in allocated accounts for each plaintiff should not be treated as though it had remained in the form of PDCO stock.  Rather, defendants include the $10.1 million according to its actual value or appreciation.

Plaintiffs object to defendants' calculated amount.  First, plaintiffs assert that appreciation in the stock should be included up to the date of the court's final order.  However, plaintiffs did not present any evidence of such appreciation through their expert

witness at trial. As a result, the court has specifically held that "the evidence does not support the addition of appreciation after the date of distribution." (May 20, 2005, Order at 15 n.4.) Plaintiffs now argue that they did not address such appreciation because their expert only testified as to damages in connection with their contract claims. Such an argument directly contradicts their previous assertion that the parties tried the case on a constructive trust theory. Furthermore, the court must base its findings upon the evidence before it at trial. See, e.g., Khosa v. Crandall, 2005 WL 2277286, at *7 (Minn. Ct. App. Sept. 20, 2005) (on motion to amend findings in constructive trust case, district court properly disregarded new evidence of property value). Finally, in light of all the evidence before the court including the history of interactions between the parties, the court finds that calculating appreciation only through the date of distribution is equitable. Therefore, plaintiffs' argument must fail.

Second, plaintiffs assert that the court should include appreciation on the $10.1 million in allocated accounts as if that amount had remained in the form of PDCO stock. However, such a calculation would not prevent unjust enrichment, but rather would constitute a penalty because that amount did not appreciate at the same rate as PDCO stock. Moreover, plaintiffs were allowed some participation in the management of those accounts. Therefore, plaintiffs' second argument is also rejected.

Plaintiffs do not dispute that their expert's testimony supports defendants' calculated amount.[1] The court finds that defendants' calculated amount is properly based upon the evidence presented at trial and the formula provided in the court's May 20, 2005, order. Therefore, based on the evidence, exhibits, arguments and all post-trial motions, the court grants defendants' motion for additional findings and conclusions. The court's findings of fact and conclusions of law now read:

**FINDINGS OF FACT**

1.   Plaintiffs are the adult children of John F. Patterson III, deceased, and his first wife. The ages of plaintiffs William O. Patterson III, John F. Patterson IV, and Karen D. Patterson Kuzminskas at the time of trial are 41, 40 and 37, respectively. All are college educated and have business and financial training and experience.

2.   Sherry was the second wife of John. Sherry and John were married from 1986 until the death of John on July 20, 2000. During

---

[1] It is true that the court did not rely upon House's testimony in its original or first amended findings of fact and conclusions of law. Rather, the court provided a formula to calculate the amount due to plaintiffs. The court used a formula because neither plaintiffs' nor defendants' proposed judgment was accepted. However, the formula has failed to resolve the issue of judgment, and the court must turn to evidence produced at trial to determine the specific amount due to plaintiffs. House's testimony is directly relevant to the computation of judgment pursuant to the court's formula. Therefore, the court now relies upon that testimony.

their marriage they made their home in the states of California and Wisconsin. At the time of John's death he was 61 years of age, while Sherry was 52.

3. Defendant P. Randall Zierhut ("Zierhut") is a California resident engaged in the financial services business. Zierhut was a close friend and financial advisor to John from the late 1980s until John's death. He also served as executor of John's estate and as trustee of several trusts established through the estate plan of John and Sherry Patterson.

4. Shortly before John married Sherry, he invested approximately $150,000 in the stock of his employer, the Patterson Dental Company. In 1992, that company went public, at which time John's investment and his resultant net worth increased in value to nearly $10 million.

5. John and Sherry Patterson planned for the ultimate distribution of John's estate with the assistance of Zierhut and attorney James Humphreys. Zierhut, although not an attorney, had extensive training and experience in the field of insurance sales and financial planning. Humphreys, a California estate planning attorney, drafted all wills and trust instruments executed by the Pattersons in 1993 and again in 1997.

6. In the original estate plan entered into by John and Sherry Patterson in 1993, the family's assets were directed to a trust known as the John F. and Sherry G. Patterson Trust

("Patterson trust"). Following the death of one spouse, the survivor would have a lifetime interest in the Patterson trust, with the Patterson children then designated irrevocably as beneficiaries following the death of the second spouse. However, until the death of the surviving spouse, the Patterson children would receive nothing under the Patterson trust agreement.

7. In November 1996, John was diagnosed as suffering from an aggressive, life-threatening cancer. During the following month, John, in consultation with Sherry, Zierhut and Humphreys, decided to amend his estate plan. The primary objective of the amended estate plan was to provide substantial gifts to the Patterson children earlier rather than requiring them to await their inheritance until the deaths of both John and Sherry.

8. The amended plan consisted of both formal and informal agreements between John and Sherry. The formal part was the will of John and a restated trust agreement for the Patterson trust. The plan prescribed a bequest upon John's death to a trust established for the Patterson children in the amount of $2.9 million (less estate tax). The balance of the assets were to be allocated to the Survivor's trust, with Sherry having a lifetime interest. Following Sherry's death, the Survivor's trust would be distributed among the Patterson children and Sherry's heirs. However, the restated agreement made the trust revocable and

6

amendable by the surviving spouse which would allow the survivor, presumably Sherry, to control any future distribution of the trust.

9.  The informal part of John and Sherry's amended estate plan called for a gift from Sherry to the Patterson children before John died in the amount of $10.1 million exclusive of gift taxes. In December 1996, it was understood by John that his $2.9 million bequest, plus the $10.1 million gift, plus Sherry's gift tax obligation of approximately $5 million ($18 million total) would be approximately two-thirds of the Patterson trust estate.

10.  The $10.1 million gift component of John and Sherry's amended estate plan was memorialized in a written document on December 26, 1996, which was approximately three weeks prior to the execution of the revised will and trust by John and Sherry.  The document is a crucial piece of evidence indicating John's intent as to how his estate would be distributed.  The document is titled, "Agreement (To Make Gift)" and states that following the revision to the Patterson trust, Sherry would make a lifetime gift to the Patterson children in the amount of $10.1 million.  The document further states that if the gift was not made until after the death of John, the gift shall be made in Patterson Dental Company stock, with a December 1996 valuation of $10.1 million.  Sherry signed the document at the request of John, and defendants found it in John's records after this action ensued.

11. Between December 1996 and spring 2000, John's cancer went into remission. However, in approximately April 2000, John's cancer again became active and it became clear that John would not survive long.

12. In anticipation of his death, John again reviewed his estate plan with his advisors Zierhut and Humphreys, and also with Florida attorney Richard Franklin. Franklin called John's attention to the fact that Sherry could avoid making gifts to the Patterson children, apart from the $2.9 million bequest, if she withdrew all assets from the Patterson (or Survivor's) trust. Franklin strongly recommended a change in the estate plan, largely to remove that feature. John, however, elected not to modify his will or the trust. It is clear that he trusted Sherry to follow through with the informal estate plan as agreed. It is also clear that any and all discretion given to Sherry to convey property to the Patterson children was not for the purpose of her choosing not to make such conveyances, but rather to avoid certain estate taxes.

13. John, in the months before his death, was aware of the fact that Sherry agreed to make a gift to his children in the amount of $10.1 million if made before his death, or in an amount of Patterson Dental stock having a December 1996 value of $10.1 million if made after his death. Between December 1996 and spring 2000, Patterson Dental stock had significantly increased in value, causing the estate value to increase to over $50 million. As a

8

result, the cash gifts for the Patterson children contemplated by John in 1996, plus tax, approximated $18 million total. In the spring of 2000, that amounted to only approximately one-third of John's net worth rather than the two-thirds originally intended.

14.  The 2000 estate plan review and John's impending death led to a revision of John and Sherry's 1996 informal estate plan, and it also led to immediate steps to implement their gifting intentions.  The revised plan contemplated that Sherry's intended lifetime gifts to the Patterson children would bring their gross "inheritance," plus tax, up to approximately fifty percent of the date-of-death value of the Patterson trust.  A contemporaneous recording in the journal of Randall Zierhut on June 13, 2000, stated that "John says 'Sherry gets 50% over and above her property, Joint Tenancy & Beneficiary Insurance & IRA.'"  The evidence shows that John intended to split the Patterson trust estate between Sherry and his children, so that his children received fifty percent of that estate and Sherry received fifty percent plus other amounts and items not relevant here.  That intention was made manifest by John's statements to his children, Sherry and Zierhut before his death.

15.  John and Sherry took immediate steps in July 2000 to implement John's intended $10.1 million cash gift from Sherry to the Patterson children.  To facilitate this gift prior to his death, John borrowed $10.1 million and immediately gave it to

9

Sherry, into whose personal account the cash was deposited on July 7, 2000.  Sherry attempted to transfer the cash to the Patterson children, including the preparation of gift letters dated July 12, 2000, in fulfillment of John's intent.

16. Before Sherry's cash gifts to the Patterson children could be completed, John and Sherry received a warning from both attorney Humphreys and their tax accountant that the gift should not be completed during the year of John's death.  The rationale for this advice was that such a gift might be construed by the IRS as a "step transaction" that triggers the assessment of estate taxes. Wishing to avoid that risk, Sherry transferred equal thirds of the $10.1 million to three sub-accounts bearing the names of the three Patterson children.

17. The gifts did not take place before John's death.  The $10.1 million placed in the allocated accounts on July 20, 2000, remained in those accounts until February and March 2002, at which time Sherry transferred the accounts to the trust established for the Patterson children.

18. Sherry transferred $10.1 million and an additional $8.6 million, all in the form of Patterson Dental Company stock to the Patterson children.  The total gifts received by them following John's death, together with the gift tax paid by Sherry on gifts transferred by her, totaled approximately $30 million.  That sum exceeded fifty percent of the date-of-death valuation of the trust,

which was $53,677,873, but did not include the corresponding appreciation in the value of the trust from date-of-death until distribution.

19. The trust estate of $53,677,873 consisted of mixed securities, including stock in Patterson Dental Company, mutual funds in the allocated accounts, and other investments. According to plaintiffs' expert Dana House, those investments, plus certain distributions made to or on behalf of Sherry, and minus assets outside the trust and certain pre-death tax liabilities, had appreciated to $70,935,581 by February 28, 2002.

20. The estate planning, gifting decisions and agreements made by John and Sherry were decisions made by or between them and were not negotiated in any manner by or with the Patterson children. The Patterson children provided no consideration and made no forbearance as a condition of their receipt of gifts and bequests from the assets of John Patterson. No consideration of any form was given for the additional gifts stemming from the 2000 plan.

21. The evidence also established without contradiction, and the court hereby finds, that John intended to give his children $2.9 million after his death. At the time John established his informal estate plan in 1996, John also intended to give his children approximately two-thirds of his estate, including $10.1 million exclusive of the payment of gift taxes. John's

11

modifications of the informal plan left the $2.9 million amount intact, but modified the additional benefit to equal the amount, including the $2.9 million, which would approximate fifty percent of the Patterson trust as valued on John's date of death.  If not conveyed to the Patterson children until after his death, John intended the additional amount to be in the form of Patterson Dental Company stock.

    22.   In light of John's role in establishing the allocated accounts for the Patterson children prior to his death, and in light of participation by the Patterson children in the investment and management of those accounts prior to their distribution, those accounts are regarded as a component of the trust corpus until the date of distribution.

**CONCLUSIONS OF LAW**

    1.   This court has jurisdiction over this matter under 28 U.S.C. § 1332, and it was properly removed to this court in accordance with 28 U.S.C. § 1446.

    2.   The Patterson children have failed to introduce sufficient evidence to show that they had an enforceable contract with either John or Sherry to convey to them any particular amount of John's estate.

    3.   There was a failure on the part of the defendants to introduce sufficient evidence to show that there existed an

enforceable contract binding the Patterson children to not contest the estate proceedings of John.

    4.    The uncontradicted evidence adduced at trial by both parties conclusively established, and it is determined by the court, that as of John's death Sherry held the assets in the Patterson trust subject to a constructive trust on fifty percent of those assets for the benefit of the Patterson children.

Under Minnesota law, "[a] constructive trust is an equitable remedy imposed to prevent unjust enrichment." In re Estate of Savich, 671 N.W.2d 746, 751 (Minn. Ct. App. 2003) (quoting Freundschuh v. Freundschuh, 559 N.W.2d 706, 711 (Minn. Ct. App. 1997)). Fraud need not be present. In re Estate of Eriksen, 337 N.W.2d 671, 674 (Minn. 1983). Rather, there need only be "clear and convincing evidence that the imposition of a constructive trust is justified to prevent unjust enrichment." Id. at 674. A constructive trust often arises "in cases where an ad hoc estate plan has gone awry." In re Estate of Savich, 671 N.W.2d at 751 (imposing constructive trust on real property otherwise ineffectively deeded because testator died before deeds were signed); see Spiess v. Schumm, 448 N.W.2d 106, 108 (Minn. Ct. App. 1989) (imposing constructive trust on account funds designating a beneficiary who decedent did not intend to ultimately keep the funds); Borsgard v. Elverum, 80 N.W.2d 604, 606 (Minn. 1957) (imposing constructive trust for the benefit of wife's

13

relatives on real property that legally transferred to husband's relatives).

In imposing a constructive trust, the court has considered the equities of the situation and concluded that clear and convincing evidence justifies such a trust to prevent the unjust enrichment of Sherry. See In re Estate of Savich, 671 N.W.2d at 752 (district court erred by considering only intent of holder of property subjected to constructive trust, rather than "equities of the situation"). In particular, the clear understanding and expectation of defendants, plaintiffs and John was that Sherry would convey fifty percent of the Patterson trust assets for the benefit of the Patterson children after John's death.

5. By actual or implied agreement, both plaintiffs and defendants tried this case to the court on the constructive trust theory. See Fed. R. Civ. P. 15(b). By introducing evidence of John's intent, emphasizing the agreements and mutual understanding between John and Sherry, and arguing extensively that Sherry fulfilled John's intent by her conveyances to the Patterson children, defendants have acquiesced to the trial of the constructive trust issue. See IES Indus. v. United States, 349 F.3d 574, 579 (8th Cir. 2003) (introduction of evidence and arguments as to new issue constitutes implied consent to trial of that issue). Further, the overlap, if any, of claims between a constructive trust that arose at John's death and alleged contracts

between Sherry and the Patterson children does not preclude implied consent to trial of the constructive trust issue. See Baker v. John Morrell & Co., 382 F.3d 816, 831 (8th Cir. 2004) (rejecting argument that evidence relevant to both an issue already pleaded and an issue purportedly tried by consent precludes implied consent under Rule 15(b)). Finally, defendants' final argument at trial addressed almost exclusively constructive trust issues and John's expectation that defendants would carry out his informal estate plan. Defendants did not object to questions from the court about issues explicitly distinct from plaintiffs' contract claims.

6. The court's equitable jurisdiction was invoked by the plaintiffs in their pleading and by implied consent through the introduction of evidence, briefing and arguments of counsel for both plaintiffs and defendants.

7. In determining the intent of John and the equities of the situation as to the disputed amount, the court has relied on all the testimony and exhibits received, including parole evidence, the estate planning documents of John and his wife Sherry, the written agreement between John and Sherry, contemporaneous memos of the witnesses and parties and other documentary evidence. See Restatement of Restitution § 160 cmt. a (1937) ("A constructive trust does not, like an express trust, arise because of a manifestation of an intention to create it, but it is imposed as a remedy to prevent unjust enrichment."); IIA Scott on Trusts § 462.1

15

(4th ed. 1989) ("A constructive trust is not based upon the intention of the parties but is imposed in order to prevent one of them from being unjustly enriched at the expense of the other.").

8.  In determining the disputed amount, the court, relying on its equitable powers, concludes that the appreciation of the Patterson trust assets held in constructive trust for the Patterson children from John's date-of-death to the date of distribution in January and February 2002 constitutes unjust enrichment of Sherry. The court further concludes that defendants have an equitable duty to convey to the Patterson children fifty percent of the Patterson trust as valued on July 20, 2000, or fifty percent of $53,667,873, less the $2.9 million gift, plus the calculated appreciation between July 20, 2000, and the date of distribution in January or February 2002, less taxes and less gifts made by the date of distribution.  Finally, defendants have an equitable duty to convey the amount due in the form of Patterson Dental Company stock.

9.  Application of the formula for trust distribution set forth in this order establishes a duty for defendants to now transfer to plaintiffs shares of stock in Patterson Dental Company with the market value, as of the date of this order, of $5,393,983, minus any tax liability owing on this or prior distributions. Any distributions to the Patterson children shall be made in such amounts as to equalize total distributions received by each of the three children.

Based upon the above Amended Findings of Fact and Conclusions of Law, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for additional findings of fact and conclusions of law [Doc. No. 108] is granted.

2. Defendants shall transfer to plaintiffs shares of stock in Patterson Dental Company with the market value, as of the date of this Judgment, of $5,393,983, minus any tax liability owing on this or prior distributions. Any distributions to plaintiffs shall be made in such amounts as to equalize total distributions received by each of the three plaintiffs.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 6, 2005

                                              s/David S. Doty
                                              David S. Doty, Judge
                                              United States District Court